UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JAMIE SHIPPING INC., PUFFIN MARINE
INVESTMENTS SA and BANK MANDIRI                    Case No.: 08 CV 6882(JFK)
(EUROPE) LTD., UK,

                          Plaintiffs,

          - against -

OMAN INSURANCE COMPANY,

                          Defendant.
-------------------------------------------------------------X


**DEFENDANT OMAN INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF TO ACCEPT AN
IRREVOCABLE LETTER OF CREDIT AS SUBSTITUTE SECURITY PURSUANT TO
RULE E(5) OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME
CLAIMS AND ASSET FORFEITURE ACTIONS**

## PRELIMINARY STATEMENT

Plaintiff's argument that Local Rule 65.1.1 controls the issue of the substitute security that it may be compelled to accept under Supplemental Rule E(5)(a) is wrong because Local Rule 65.1.1 does not apply to proceedings under Rule E(5)(a).

Defendant Oman Insurance Company ("OIC") maintains that Judge Lynch's decision in *Pancoast Trading S.A. v. Eurograni S.r.l.*, 2008 U.S. Dist. LEXIS 4224, 2008 A.M.C. 859 (S.D.N.Y. 2008), is not controlling here for two reasons: first, the substitute security offered in that case was "no more than an 'IOU' backed only by [plaintiff's] promise to pay." *Id.*, at 1. That is a very different situation from the irrevocable letter of credit offered by the multi-national, multi-billion dollar bank in this case. Second, the parties and the Court in *Pancoast Trading* did not address the threshold issue of whether Rule 65.1.1 should, or can, be applied to dictate the type of substitute security acceptable under Supplemental Rule E(5)(a).[1]

It is not clear whether Judge Lynch considered Local Rule 65.1.1 to be the exclusive list of substitute security that can and will be approved by the Court under Supplemental Rule E(5)(a) absent the agreement of the parties, or that it simply serves as a guideline for the Court's decision. Judge Lynch first stated that the Local Rule "provide[s] a firm *guideline* for what constitutes adequate security", but also later stated that "Local Rule 65.1.l(b) identifies the kinds of undertakings, guarantees or deposits *that constitute adequate security* where security is required." *Id.* at 2 (emphasis added). However, OIC respectfully submits that to the extent that *Pancoast Trading* holds that Local Rule 65.1.1 dictates the only acceptable forms of substitute security in this case, or even that Local Rule 65.1.1 should serve as a "firm guideline" for the

---

[1] The parties' motion papers, copies of which are available on Pacer, demonstrate that the parties did not even address the issue of whether Local Rule 65.1.1 properly could be applied to the issue of substitute security.

Court to follow in making its determination whether the proffered security is adequate, it is incorrect and should not be followed by this Court.

**ARGUMENT**

I

**LOCAL RULE 65.1.1 WAS NOT DESIGNED TO APPLY
TO SUPPLEMENTAL RULE E(5)(a) PROCEEDINGS**

As is explained in detail in Section II below, under Supplemental Rule E(5)(a), a defendant has the absolute and unrestricted right to post any type of substitute security to obtain the release of its attached property — so long as the substitute security adequately protects the plaintiff's position in the litigation.

Rule A.1(b) of the Local Admiralty and Maritime Rules of the Southern and Eastern Districts of New York provides specifically that "[t]he Local Civil Rules also apply to the procedure in [claims and proceedings governed by the Supplemental Admiralty Rules], *except to the extent that they are inconsistent with* the Supplemental [Admiralty] Rules." *Id.* (emphasis added). Local Rule 65.1.1 would be inconsistent with Supplemental Rule E(5)(a) if it were applied because it would restrict the defendant's unfettered right to post any type of adequate security to only the three choices set forth therein.

Moreover, the numbering of Rule 65.1.1 further establishes that it was designed to apply to situations such as where a party is required to post security in connection with injunctive relief — rather than the situation where substitute security is being posted in order to release property that was attached under Supplemental Rule B. Fed. R. Civ. P. 83(a) requires, in part, that local rules "must conform to any uniform numbering system prescribed by the Judicial Conference of the United States." Therefore, Local Rule 65.1.1 logically refers to Rules 65 and 65.1 of the Federal Rules of Civil Procedure. Federal Rule 65(c) provides for the giving of security in

3

connection with the issuance of a preliminary injunction or temporary restraining order, and Federal Rule 65.1 establishes that a surety on a bond or other undertaking agrees to submit to the court's jurisdiction with respect to its liability on that bond or undertaking.

Significantly, Federal Rule 65.1 contains the following introductory language to make it clear that it applies to admiralty proceedings: "Whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) require or allow a party to give security." However, Local Rule 65.1.1(b) omits similar introductory language that would make it specifically applicable to admiralty proceedings, and instead begins with the phrase "[e]xcept as otherwise provided by law." This deliberate choice of wording, combined with the "except to the extent that they are inconsistent with the Supplemental [Admiralty] Rules" language in Rule A.1(b) of the Local Admiralty Rules noted above, establishes that Local Rule 65.1.1 was not designed to be applied to Supplemental Rule E(5)(a) proceedings.

In the context of this case, the language "except as otherwise provided by law" in Local Rule 65.1.1(b) refers to the fact that Supplemental Rule E(5)(a) provides that a defendant has an unrestricted right to post any type of adequate substitute security. Accordingly, the following provisions of that Local Rule do not apply to this case. *See also In the Matter of Slobodna Plovidba*, 1987 WL 20043 *1 (W.D. Mich., March 26, 1987)("[I]t is highly doubtful that [a local district court rule similar to Local Rule 65.1.1] was intended to apply in the specialized area of admiralty.")

II

## LOCAL RULE 65.1.1 CANNOT BE APPLIED TO SUPPLEMENTAL RULE E(5)(a) PROCEEDINGS BECAUSE IT WOULD IMPERMISSIBLY ABRIDGE THE DEFENDANT'S RIGHT TO POST SUBSTITUTE SECURITY

Rule E(5)(a) provides that when a defendant's property is attached, the "property [shall be] released, on the giving of security, to be approved by the court." This language in no way restricts the type of security involved. The defendant has the absolute and unfettered right to have its property released so long as it provides substitute security that adequately protects the plaintiff's position in the litigation. "Should it wish, [the defendant] has the option of relieving itself of this particular attachment by posting *other security*." *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006)(emphasis added). Because Local Rule 65.1.1 would restrict the defendant to its three forms of security, it impermissibly would abridge the defendant's substantive right under Rule E(5)(a) to post other types of substitute security.

"[A] district court has discretion to adopt local rules that are necessary to carry out the conduct of its business. ... A district court's discretion in promulgating local rules is not, however, without limits. ... [Such local rules must be] consistent with 'the principles of right and justice.' ... [28 U.S.C.] Section 2071 requires that local rules of a district court 'shall be consistent with' the 'rules of practice and procedure prescribed by the Supreme Court.'" *Frazier v. Heebe*, 482 U.S. 641, 645, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987)(citations omitted)(striking down a local rule because its requirement that a member of the Louisiana bar live or maintain an office in Louisiana in order to apply for admission to the District Court's bar did not achieve any purpose and therefore was "unnecessary and irrational."). "[I]t is axiomatic that the Federal Rules of Civil Procedure trump inconsistent interpretations of local rules." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir, 2004). "A

5

local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is also invalid." *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). "[A]ny inconsistencies between a local and a federal rule must be resolved in favor of the federal rule." *Stilloe v. Almy Brothers, Inc.*, 782 F. Supp. 731, 732 (N.D.N.Y. 1992).

> A local rule may 'dictate practice or procedure but may not enlarge, abridge or modify any substantive right." *In re Frayne Sunahara*, 326 B.R. 768, 782 (9th Cir. 2005)(*quoting Rivermeadows Assocs., Ltd. v. Falcey (In re Rivermeadows Assocs., Ltd.)*, 205 B.R. 265, 269 (10th Cir. 1997). "A local rule must be both constitutional and rational, and its subject matter must be within the ambit of the court's regulatory power. ... Even if a local rule does not contravene the test of a national rule, the former cannot survive if it subverts the latter's purpose. *See Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 144 (1st Cir. 1976). Then, too, local rules should cover only interstitial matters. *See* Fed. R. Crim P. 57 advisory committee's note; *see also United States v. Horn*, 29 F.3d 754, 760 (1st Cir. 1994)(noting that a court's inherent power has definite limits). They may not create or affect substantive rights, *see* 28 U.S.C. §2072(b), or institute "basic procedural innovations," *Miner v. Atlass*, 363 U.S. 641, 650, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960).

*Stern v. U.S. District Court for the District of Massachusetts*, 214 F.3d 4, 13 (1st Cir. 2000). *See also, Z.D. Bonner v. Adams*, 734 F.2d 1094, 1099 (5th Cir. 1984)(same).

Moreover, a "district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked." *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991). "The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule." *Id.* "Fairness is the standard that guides the district court in its exercise of that discretion." *Id.*, 1049. "The district court should ask whether the application of the letter of Local Rules to a particular case would cause

an unjust result. If faced with potential unfairness, the district court's determination of fairness may include, but is not limited to, a consideration of the facts of the case, the content and goal of the Local Rules, the legal precedent on analogous issues, and the letter and legislative intent of any relevant statute." *Id. See also Dedji v. Mukasey*, 525 F.3d 187,192 (2d Cir. 2008)("'[A] district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.'")(q*uoting U.S. v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000)).

Because defendant OIC has the unfettered right under Supplemental Rule E(5)(a) to obtain the release of its attached property by posting substitute security of any type that adequately protects plaintiff's position, a local rule that would restrict or abridge that substantive right by limiting the choices of substitute security is invalid and cannot be applied. So long as it is adequately protected, it is immaterial to plaintiff what type of substitute security is posted in a Rule B case. The three types of security described in Local Rule 65.1.1 would not make plaintiff any "more secure" in its claim in this case than the proffered letter of credit, and application of that Local Rule to limit OIC's choices of substitute security to the exclusion of the letter of credit would not in any way serve to advance or achieve the purpose of Rule E(5)(a). Accordingly, Local Rule 65.1.1 cannot be applied to decide the question of whether OIC's proffered substitute security is acceptable because the strictures contained in that rule are "unnecessary and irrational." *See Frazier v. Heebe*, 482 U.S. at 645.

Moreover, plaintiff's suggestion that this Court refrain from exercising its discretion to determine whether the proffered letter of credit is adequate security, and instead default to the dictates of Local Rule 65.1.1, is inappropriate. *See Roth v. Bank of the Commonwealth*, 583 F.2d

527, 539 (6ᵗʰ Cir. 1978)(noting that a court's refusal to exercise its discretion by refusing to consider the question before it is improper because "it is inherent in the use of discretion that it be exercised and not neglected altogether.").

Maritime attachments arose, in part, because of the maritime defendants' ability to sail with its property out of the court's jurisdiction. *See Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006)("Maritime parties are peripatetic, and their assets are often transitory."). To remedy this situation, Rule B was created to enable the plaintiff to: "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Id.*, at 437. However, because of its disruptive affect on the defendant's business operations, Rule E(5)(a) was created to afford the defendant the option of continuing to use his attached property provided he posted adequate substitute security. For example, suppose that instead of attaching wire transfers, plaintiff in this case had attached a shipment of defendant's watches stored in a New York City warehouse that defendant had contracted to sell to a third-party. If the defendant also had a shipment of jewelry of the same or greater value stored in the same warehouse, Rule E(5)(a) would afford him the absolute right, in the exercise of his discretion, to obtain the release of the watches (thereby allowing him to complete his business with his buyer) by posting the jewelry as substitute security. The concept is no different in this case. The proffered letter of credit is of equal value to the attached funds, and it use as substitute security will not in anyway prejudice plaintiff's position in this case.

This result is further compelled by the equities of the situation presented by this attachment. An attachment is easily obtained under Rule B. *See Aqua Stoli*, 460 F.3d at 443 (describing Rule B as "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained."). Plaintiff has attached more than $3,558,738.50 of OIC's money

without having to prove a single allegation set forth in his Complaint, and indeed without even having commenced one of the two underlying arbitrations in London. It would be especially unfair under these circumstances to allow plaintiff the power to dictate the type of substitute security the defendant must post to release its property – without regard to the issue of whether the proffered substitute security adequately protects plaintiff's position. *See Somlyo*, 932 F.2d at 1049(Fairness is the standard used to determine whether a court should exercise its discretion to disregard the application of a Local Rule).

Plaintiff's attempt to dismiss the cases cited by OIC as "not truly support[ing] Defendant's position" is without merit. The fact that these cases involved proceedings under Rule F instead of Rule B is meaningless because they involve the identical concept presented by this motion -- that a defendant is not restricted to any particular form of substitute security (provided it does not prejudice the plaintiff's position), and the Court has the discretion to determine what is adequate security. *See In the Matter of Slobodna Plovidba*, 1987 WL 20043 (W.D. Mich., March 26, 1987); *In the Matter of A&J Towing, Inc.*, 1997 WL 289396 (E.D. La., May 29, 1997); *Karim v. Finch Shipping Co.*, 1998 WL 713396 (E.D. La. October 6, 1998). Copies of these unpublished decisions are attached hereto as Exhibit "A." *See also Acacia Vera Navigation Co., Ltd. v. Kezia, Ltd.*, 78 F.3d 211, 214 n.8 (5th Cir. 1996)("A letter of undertaking (LOU) is another form of security allowed to secure the release of a vessel in an in rem action under Fed. R. Civ. P. Supp. Rule E(5)(a)."); *L&L Marine Transportation, Inc. v. M/V Hokuetsu Hope*, 895 F. Supp. 297, 300 (S.D. Al. 1995)("A letter of undertaking serves as adequate security to release a vessel."); *Maritima Antares, S.A. v. Vessel Essi Camilla*, 633 F. Supp. 694, 695 (E.D. Va. 1986)("A letter of undertaking provides an equally acceptable means of warranting payment of damage awards.").

Finally, plaintiff's half-hearted attempt to infer that unspecified questions may exist as to the creditworthiness of Mashreq Bank is completely without merit. Attached hereto as Exhibit "B" is a copy of Mashreq Bank's 2007 Annual Report detailing its financial assets and condition. This report, as well as the bank's annual reports for the preceding seven years, easily are accessible on Mashreq Bank's website at http://www/mashreqbank.com/about-us/financials/annual-reports.asp. If plaintiff truly had a realistic concern about the financial security of the letter of credit offered by this multi-national, multi-billion dollar financial institution, with offices in New York operating under the supervision of the New York State Banking Department, it presumably would have brought that fact to the Court's attention.

Accordingly, OIC respectfully submits that the Court should determine that a letter of credit is an acceptable form of substitute security that may be compelled on a plaintiff under Supplemental Rule E(5)(a), and that the letter of credit proffered by OIC constitutes adequate security in this case.

## CONCLUSION

OIC respectfully requests that its motion to compel be granted in all respects.

Dated: September 2, 2008
     New York, New York

Respectfully submitted,

By_____
    Christopher Carlsen (CC 9628)
    CLYDE & CO US LLP
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174
    (212) 710-3900

    Attorneys for Defendant
    Oman Insurance Company

EXHIBIT A

Not Reported in F.Supp., 1987 WL 20043 (W.D.Mich.), 1987 A.M.C. 2209

United States District Court, W.D. Michigan, Northern Division.
In the Matter of the Petition of SLOBODNA PLOVIDBA, an agency of the Government of Yugoslavia, as owners of the M/V JABLANICA for Exoneration from or Limitation of Liability.
No. M86-209 CA3.
March 26, 1987.

Foster, Meadows & Ballard, P.C., Robert N. Dunn, Detroit, Mich., for petitioner.

Leonard C. Jaques, The Jaques Admiralty Law Firm, P.C., Detroit, Mich., for claimants.

*ORDER DENYING CLAIMANTS' MOTION TO INCREASE SECURITY AND FOR FILING OF A SURETY BOND*

STEPHEN W. KARR, United States Magistrate.

*1 This is a petition under the Limitation of Liability Act, 42 U.S.C. § 181 *et seq.,* as amended. Petitioner Slobodna is an agency of the Yugoslav government and owner of the vessel *M/V Jablanica.* Claimants are personal representatives of three fishermen killed when their boat collided with the *Jablanica* in the waters of upper Lake Michigan off Charlevoix County.

The purpose of Slobodna's petition is to limit its potential tort liability to the value of the *Jablanica* and her freight pursuant to 46 U.S.C. § 183(a). In compliance with 46 U.S.C. § 185 and Fed.R.Civ.P. Supplemental Rule F(1), Slobodna tendered to this court a "Letter of Undertaking" for a sum in excess of $2.6 million. Judge Hillman, by *ex parte* order dated November 17, 1986, accepted the tender as adequate security for an amount equal to the appraised value of the *Jablanica* plus freight, costs and interest.

Claimants are dissatisfied with both the form and amount of security thus far provided by the shipowner. Their present motion therefore asks the court to order Slobodna to file a "surety bond" in the augmented amount of $7.6 million. For the reasons set forth below, the court denies the motion.

*Form of Security*

Slobodna's security is currently in the form of a "Letter of Undertaking" signed by the United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd. (UKMA). By the terms of this instrument UKMA submits to this court's jurisdiction and agrees to pay any judgment against Slobodna up to $2.6 million. On its face this would appear to be adequate security, and Judge Hillman so found on November 17, subject to redetermination pursuant to Supplemental Rule F(7).

Nevertheless, claimants object to this "undertaking" as merely a bare promise by a foreign entity. They assert that Slobodna must produce a domestic formal surety bond, relying on a local court rule and *Matter of Compania Naviera Marasia, S.A., Atlantico,* 466 F.Supp. 900 (S.D.N.Y.1979).

Slobodna responds in effect that UKMA is the largest marine underwriter in the world, and that its "undertaking" is just as good as any other available commercial security. It adds further that the sovereign nation of Yugoslavia should not be put to the harassment and expense of procuring a corporate surety bond.

The court agrees with Slobodna. Supplemental Rule F(1) and 46 U.S.C. § 185 speak only in terms of "approved security", not "domestic corporate surety bonds". Likewise, Fed.R.Civ.P. 65.1, which refers to the giving of security required by "these rules, including the Supplemental Rules for Certain Admiralty and Maritime Claims," provides for security "given in the form of a bond or stipulation or

*other undertaking* " (emphasis added).[FN1] Thus, the statutes do not appear to mandate any particular form of security. A local rule of court does generally require that security undertakings must be executed by surety companies approved by the Treasury Department. W.D.Mich.R. 37(b). Presumably, UKMA is not on the Treasury list. However, Rule 37(b) is part of a section of the local rules that addresses "Actions in General", and it is highly doubtful that it was intended to apply in the specialized area of admiralty. Hence, the court does not believe that Rule 37(b) should control the question of the adequacy of UKMA's "Letter of Undertaking".

*2 Turning to the surprisingly sparse case law, the court notes that the *Atlantico* decision does support claimants' position. There the court approved as security a "Letter of Undertaking" identical to that issued by UKMA in this case, but it made clear that the approval was conditioned on the absence of objection from any claimant. 466 F.Supp. at 903. Approval was based on the fact that "Letters of Undertaking" are common and customary forms of security in the shipping trade. *Id.* at 902. The court further held, however, that in the event of objection the shipowner would be required to post a bond issued by a Treasury Department-approved corporation. *Id.* at 903.

The court accepts the actual result of *Atlantico,* but rejects the "claimant objection" exception discussed therein. The exception gives to claimants "an absolute right" to reject sureties. 466 F.Supp. at 903. Such an untrammeled right in effect transfers the power to determine what is "approved security" from the court to claimants, which flies in the face of the language and intent of 46 U.S.C. § 185 and Fed.R.Civ.P. Supplemental Rule F(1). In other words, security approval matters should be within the discretion of the court, not the parties. *See New York Marine Managers v. Helena Marine Service,* 758 F.2d 313, 317 (8th Cir.), *cert. denied,* 106 S.Ct. 148 (1985).

In the absence of any proper guidance from the authorities discussed above, the court concludes that it must exercise the discretion alluded to in *New York Marine Managers* by balancing the parties' interests. Claimants obviously possess an important stake in ensuring that Slobodna produces a reputable surety from whom they can collect any judgment with reasonable ease. The court has no doubt that UKMA is a responsible insurer, and not a fly-by-night foreign question mark. *See* 7A *Benedict on Admiralty* § 1.01 (7th ed. 1986) (Rules of United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd. listed first in volume of Protection and Indemnity Club Rules). Furthermore, it does not seem likely that claimants would experience much difficulty in holding UKMA to its "Letter of Undertaking". This is because there is little realistic probability that UKMA would jeopardize its good name in the marine insurance business by defaulting on an obligation to a government shipowner to pay the relatively moderate (by insurance standards) amount of $2.6 million. Therefore, any increased collectibility interests claimants may have in forcing Slobodna to substitute a domestic corporate surety bond for UKMA's "Letter of Undertaking" must be viewed as rather slight.

Slobodna's interest in opposing claimant's motion is monetary. It simply does not wish to incur the added expense of procuring a surety bond. In weighing this interest, the court cannot close its eyes to the fact that petitioner is a governmental agency of a foreign sovereign. Although Slobodna must comply with our law when plying its ships in American waters, the court recognizes that an order requiring the filing of a surety bond is equivalent to an order for expenditure from the Yugoslav treasury. Protection of the national fisc is certainly an important interest. Given that UKMA's "Letter of Undertaking" is as a practical matter adequate, the court concludes that Slobodna's interest outweighs that of claimants on this issue. Accordingly, the motion to change the form of security is denied.

*Amount of Security*

*3 Claimants base this portion of their motion upon Fed.R.Civ.P. Supplemental Rule F(7), which states in pertinent part that:

any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury; and, after notice and hearing, the court may similarly order that the deposit or security

be increased or reduced.

The statutes mentioned in Rule F(7) are the "Loss of Life" amendments to the Limitation of Liability Act. Specifically material here is 46 U.S.C. § 183(b):

(b) In the case of any seagoing vessel, *if the amount of the owner's liability as limited under subsection (a)* of this section *is insufficient to pay* all losses in full, and the portion of such amount applicable to the payment of losses in respect of *loss of life or bodily injury* is less than $420 per ton of such vessel's tonnage, *such portion shall be increased to an amount equal to $420 per ton,* to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.

(emphasis added).

Claimants argue that the $2.6 million (the § 183(a) fund) put up thus far by Slobodna is insufficient to cover their personal injury and wrongful death damages. They therefore ask the court to order Slobodna to increase its security to $420 per ton of the *Jablanica,* or approximately $7.6 million (the § 183(b) fund). Claimants argue that the $2.6 million security is inadequate in light of their aggregate claims of compensatory and punitive damages totaling $22 million. The damage figures are based upon pain and suffering, loss of support, consortium etc. by the respective spouses, children, parents and siblings of the deceased middle-aged fishermen.

Slobodna responds that claimants' damage calculations are outrageously high given that one fisherman (Peterson) was survived only by a parent, and another (Perkins) only by his spouse and no minor children. Slobodna also raises two legal arguments against an increase in security. First, it argues that the setting up of a § 183(b) fund is not appropriate until it has *in fact* been determined that the § 183(a) fund is insufficient to cover loss of life and bodily injury damages; i.e., the § 183(b) fund cannot be created until after the merits have been tried and the court has ascertained actual and punitive damages. There is some support for this argument in old case law, and a major admiralty treatise suggests that the literal terms of § 183(b) ( *is* insufficient, not *may be* insufficient) are consistent with this approach. *See The Park Victory (Petition of Luckenbach S.S. Co.), 1953 A.M.C. 808 (S.D.N.Y.1953);* G. Gilmore & C. Black, *The Law of Admiralty,* 920 (2 ed. 1975).

However, modern courts have concluded that it is "sensible" to order a § 183(b) increase in security before trial where the amount of claimed damages greatly exceeds the value of the ship (the § 183(a) fund). *Complaint of Panoceanic Tankers Corp. (The Panoceanic Faith), 332 F.Supp. 313 (S.D.N.Y.1971); Petition of Alva Steamship Co. Ltd (The Alva Cape), 262 F.Supp. 328 (S.D.N.Y.1967).* Slobodna characterizes the approach taken in these cases as an "exception" to the "general rule" reflected in *Park Victory,* and its second argument is based on the assertion that the present case does not involve a disparity between claimed damages and the § 183(a) fund of sufficient magnitude to warrant the exceptional treatment accorded claimants in *Panoceanic Faith* and *Alva Cape.*

*\*4* The court concludes that it need not further address either party's contentions, because the augmentation of security issue is controlled by authority not cited in their briefs and oral arguments. In *Complaint of Caribbean Sea Transport Ltd., 748 F.2d 622 (11th Cir.1984), reh'g denied, 753 F.2d 948 (1985),* the Court of Appeals initially noted that "the law is not clear as to when, how, and under what conditions the court can order additional security posted under § 183(b)." 748 F.2d at 628. After a thorough, well-reasoned discussion of the issue, the court concluded as follows:

However, section 183(b) does provide that the owner's liability to personal injury claimants will be increased only if the section 183(a) fund "is insufficient to pay all losses in full." Thus we think that personal injury claimants must make a clear, preliminary showing that the section 183(a) fund will be insufficient to cover all personal injury claims before a court should augment that fund under section 183(b). We hold that in order to augment the security fund pursuant to section 183(b), the district court must make preliminary determinations of the nature and extent of personal injury claims and the likelihood of recovery based on those claims, including that there is a likelihood that the section

183(a) fund will be insufficient to pay those claims in full. This will usually require some sort of evidentiary hearing. We emphasize that the product of such a hearing does not represent a final adjudication of liability and damages, but merely represents a preliminary appraisal of the ship owner's exposure to damages.

*Id.* at 628-29. The language of the Eleventh Circuit in *Caribbean Sea Transport* makes clear that the burden of showing that the shipowner faces likely exposure to damages in excess of the § 183(a) fund rests with the personal injury claimant. Placing the burden on the claimant is consistent with the pro-shipowner purposes of the Limitation of Liability Act.

A hearing was held on this motion on March 23, 1987. At that proceeding claimants introduced no testimony or other evidence bearing upon the "nature and extent of personal injury claims" involved in this case (other than counsel's statement that the three fishermen drowned), or "the likelihood of recovery based on those claims", or the "likelihood that the § 183(a) fund will be insufficient to pay those claims in full." Claimants therefore patently failed to carry the burden of preliminary persuasion delineated in *Caribbean Sea Transport.* Accordingly, their motion to increase security is also denied.

> FN1. Claimants cite as additional authority for their position 6 U.S.C. § 7. This statute was repealed five years ago. Act of September 13, 1982, § 5(b), Pub.L. No. 97-258, 96 Stat. 1085. Its successor, 31 U.S.C. § 9306, applies only in situations where a "surety bond" is required by law. *See* 31 U.S.C. § 9304. As stated above, applicable statutes do not refer to "surety bonds".

W.D.Mich.,1987.
Matter of Petition of Slobodna Plovidba
Not Reported in F.Supp., 1987 WL 20043 (W.D.Mich.), 1987 A.M.C. 2209

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 289396 (E.D.La.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
In the Matter of A. & J. TOWING, INC., as owner of the M/V SEAHORSE
Civ. A. No. 97-0548.
May 29, 1997.

DUVAL

*1 Before the court is a motion filed by Respondent Pearl Bodden de Mosquitto requesting an entry of summary judgment dismissing Petitioner A. & J. Towing, Inc.'s ("A. & J.'s") limitation of liability action. Alternatively, Mosquitto seeks the following forms of relief: (1) an order dissolving the stay that restrains further proceedings against A. & J. for claims arising out of the incident described in the complaint, (2) an order vacating the court's acceptance of A. & J.'s Letter of Undertaking deposited as security for the casualty loss, (3) an order adjusting the court-approved limitation fund, (4)an order requiring A. & J. to deposit cash or bond as approved security for the amount of the limitation fund.

Mosquitto's Motion for Summary Judgment was initially set for hearing on April 2, 1997 but was subsequently reset for April 16, 1997. Having considered the pleadings and applicable law as well as the posture of this case, the court finds that the Motion for Summary Judgment, as well as all requests for alternative relief should be denied with the exception of Mosquitto's request for adjustment of the limitation fund.

A. Motion for Summary Judgment

1. The Parties
   Respondent Mosquitto's husband was a crewmember aboard the M/V FLORIDA SEAHORSE at the time that it was towing the SUARD IV from astern. According to the marine casualty report, the SEAHORSE's towline began to "yaw," or veer from side to side, until it broke loose of the Norman pins, whose purpose is to ensure the towline is directed aft. The towline then struck and killed Mosquitto's husband.

   Petitioner A. & J. Towing, Inc., owner of the SEAHORSE, seeks exoneration from damages or limitation of liability for the accident pursuant to 46 U.S.C. section 183 *et seq.* and Rule F of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. These statutory provisions entitle shipowners who comply with certain procedural requirements to limit liability following maritime accidents that occur without their knowledge or privity. In an effort to comply with statutory mandates, A. & J. posted security in the form of a Letter of Undertaking that valued the company's casualty loss at $400,000. The court subsequently accepted this affidavit of value.

2. Bases for Summary Judgment
   Mosquitto seeks summary judgment on grounds that the Letter of Undertaking that A. & J. posted as security for its interest in the casualty loss in compliance with Rule F(1) and 46 U.S.C. section 185 is invalid because it: (1) does not constitute "approved security" within the meaning of the statute, (2) misidentifies the casualty, and (3) contains a knowingly false and incomplete valuation of the casualty loss.

3. Standard for Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Stults v. Conoco, 76 F.3d 651, 656 (5th Cir.1996). When the moving party has carried its burden under Rule 56(c), the adverse party must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Tubacex, Inc. V. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995). "Facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With these standards in mind, the court turns to the merits of the arguments.

4. Analysis

*2 The Letter of Undertaking is not invalid for summary judgment purposes. As a general matter, Rule F does not foreclose the use of letters of undertaking as security for limitation petitions. Rule F (1) states that a petitioner seeking to limit liability "must deposit with the court, for the benefit of claimants, a sum equal to the amount of the value of his interest in the vessel and pending freight, or approved security, therefor ..." However, the statute does not mandate a particular form that such security must take.

Furthermore, in In The Matter of Slobodna Plovidba, 1987 A.M.C. 2209, the court approved the use of a letter of undertaking as adequate security, having observed that "security approval matters should be within the discretion of the court, not the parties." Id. at 2211-12. Thus, Mosquitto's suggestion that "approved security" encompasses only cash and bonds comports with neither the statutory language nor the case law.

Mosquitto's contention that a letter of undertaking cannot be accepted where, as here, a claimant objects to its use is also rejected. Mosquitto correctly points out that in In The Matter of Compania Naviera Marasia S.A. Atlantico, 466 F.Supp. 900, 903 (S.D.N.Y.1979), the court conditioned its approval of a letter of undertaking on claimants' lack of objection. However, in Plovidba, the court rejected the objection-exception after expressing concern that it would transfer from courts to claimants the "absolute right" to determine what constitutes "approved security." 1987 A.M.C. 2209 at 2211-12.

The court also finds that A. & J.'s inaccurate description of the location of the casualty does not render the Letter of Undertaking invalid for summary judgment purposes. Both A. & J.'s complaint and the Letter of Undertaking state that the accident occurred on the Mississippi River. However, according to the U.S. Coast Guard report, the incident took place in the Gulf Intracoastal Waterway in Lafourche Parish, Louisiana. Mosquitto contends that A. & . J.'s incorrect statements invalidate its Letter of Undertaking. The court rejects this argument.

No statutory provision requires that "approved security" make any reference to the circumstances surrounding a given casualty. According to Rule F(2), complaints in limitation proceedings "shall state," inter alia, "whether the vessel was damaged, lost, or abandoned, and, if so, when and where" (emphasis added). Yet this section is inapplicable to A. & J.'s Letter of Undertaking, which does not constitute a complaint.

To the extent that the mistaken reference renders the complaint defective, such defect may be cured by amendment under the relation back doctrine of Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) authorizes courts to give a party leave to amend its pleadings "when justice so requires" once more than 20 days have elapsed since the adverse party has been served. In light of

this directive and the role that equitable considerations play in limitation actions, the court permits A. & J. to amend its complaint.

*3 In *Moore-McCormack Lines, Inc. V. Richardson*, 295 F.2d 583, 597 (2d Cir.1961), the court stated that a limitation proceeding is "the administration of equity in an admiralty court and all the ease with which rights can be adjusted in equity is intended to be given to the proceeding." The equitable considerations weigh in A. & J.'s favor in this case. The general requirement of Rule F(2) is that complaints "set forth the facts on the basis of which the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited."

Despite the inaccurate reference to the location of the accident, A. & J.'s complaint alleges sufficient facts to satisfy both requirements. Furthermore, any potential prejudice to Mosquitto that might have resulted from the misidentification has been rectified by the fact that the U.S. Coast Guard report has apprised both parties of the true location of the incident. In light of the foregoing analysis, A. & . J.'s error does not support the motion for summary judgment.

The court also finds that A. & J.'s valuation of the casualty loss fails to provide sufficient justification for Mosquitto's motion. A. & J. enlisted a marine expert to appraise the value of its vessel and pending freight, pursuant to Rule F(1). According to 46 U.S.C. section 185, Note 11, this type of appraisal is the usual method by which the value of vessels are ascertained in limitation proceedings.

Mosquitto has made numerous allegations with respect to A. & J.'s valuation that raise genuine issues of material fact that must be resolved by the trier of fact. These factual matters include: whether A. & J. acted in "bad faith" by hiring a "friendly surveyor" and by failing to disclose insurance payments, improvements and renovations that increased the boat's value; whether or not the appraisement incorporates the value of the SEAHORSE's "pending freight" as is required under Rule F (1)(Mosquitto claims that it does not but the Letter of Undertaking expressly states otherwise); and whether the valuation is as of the date on which the accident occurred or the date of the termination of the voyage, which Rule F(1) requires.

Contrary to Mosquitto's assertion, the Letter of Undertaking is not invalid because of A. & . J.'s failure to value the SEAHORSE's tow. Mosquitto has argued that the "flotilla rule" requires that both the tug and barge be included in the security, citing *The CARROLL*, 60 F.2d 985, 987 (D.C.Md.1932) to support this proposition.

More modern cases have rejected the "flotilla rule" where, as here, there is no common ownership of the barge and tow. *See Cenac Towing Co., Inc. V. Terra Resources, Inc.*, 734 F.2d 251, 254 (5th Cir.1984) (the flotilla doctrine requires the tender of all the vessels in a flotilla where they were "not only owned by the same person, but were also both engaged in a common enterprise and under a single command"). *See also In Re Archer Daniels Midland Co.*, 1995 WL 600892, *1 (E.D.La.10/11/95) (holding that all three of the *Cenac* factors-common ownership, common enterprise, and single command-must be present for the flotilla doctrine to apply).

*4 Because A. & J. had no interest in the SEAHORSE's tow, the common ownership requirement of *Cenac* is not satisfied and the flotilla doctrine does not apply. Therefore, A. & . J.'s security does not fail for excluding the value of the tow.

## B. Alternative Motion for Dissolution of the Stay

Having denied the Motion for Summary Judgment, the court addresses Mosquitto's request for alternative relief. The court first finds that it would be improper to lift the stay at this time.

In granting A. & J.'s request for a stay of proceedings, the court exercised its injunctive power pursuant to Rule F(3). This provision authorizes courts to enjoin any further proceedings relating to a limitation claim against a shipowner who has complied with the procedural requirements of Rule F(1). Courts have recognized the "inherent conflict" between this provision, which grants exclusive federal

jurisdiction over limitation proceedings, and the "savings to suitors" clause, 28 U.S.C. 1333, which preserves claimants' right to pursue state law based claims. *In Re Complaint of Port Arthur Towing, Co., 42 F.3d 312 (5th Cir.1995)* at 315. Courts have alleviated this tension by recognizing two situations in which the bar of Rule F(3) may be lifted: (1) the single-claim-inadequate-fund situation and (2) the multiple-claim-adequate-fund situation.

Despite Mosquitto's characterization of the case at bar as a single claim scenario, the court is convinced that it more closely resembles the multiple claim situation. Mosquitto has expressed an intention to bring actions against a number of different parties that may cross-claim against A. & J. for contribution or indemnification (Respondent's Defenses Contesting Right to Limitation, pp. 11-12). In *Odeco Oil & Gas. Co., Drilling Division v. Bonette, 4 F.3d 401 (5th Cir.1993)*, the court held that [p]arties seeking indemnification or contribution from a shipowner must be considered claimants within the meaning of the Limitation Act. *Id. at 404.*

Whether or not Mosquitto has already filed suit against other parties is irrelevant to the analysis. In *Kattelman v. Otis Engineering, Corp.,* 650 F.Supp. 1111 (E.D.La.1988), the court held that "... where, as here, a *potential* set of circumstances exists in which the shipowner could be held liable for indemnification, a multiple claimant situation emerges ..." (emphasis added). *Id.* at 1115. *See Bonnette, supra, 4 F.3d 401, 405* (in deciding whether to lift the stay in a limitation proceeding, the district court should have considered potential claims for contribution or indemnity, even though such claims had not yet materialized). Thus, the mere possibility that other litigants will seek indemnification or contribution in excess of the limitation fund suffices to create a multiple claimant situation.

Cross-claims for contribution and indemnification by co-defendants against a limitation fund can create multiple-claimant-*inadequate*-fund situations for which the court recognizes no exception to Rule F(3). To prevent such a situation from arising, courts require that claimants make certain stipulations that preserve shipowners' right of limitation.

*\*5* Before a court can dissolve a stay where multiple claimants are involved, all claimants must stipulate that they: (1) concede the sufficiency in amount of the stipulation of value contained in the limitation petition, (2) consent to waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in state court, and (3) concede the shipowner's right to litigate all issues relating to limitation in the limitation proceeding. *In Re Mister Wayne, 729 F.Supp. 1124 (E.D.La.1989)* at 1128. The court finds that the stipulations in this case are inadequate to fully protect A. & J.'s limitation rights.

First, none of A. & . J.'s potential codefendants has agreed to the stipulations, which means that dissolution of the stay could impermissibly expose A. & . J. to liability in excess of the limitation fund. *See In Re Complaint of Port Arthur Towing, 42 F.3d at 312* (trial court's refusal to lift a stay was proper where stipulations failed to bind all necessary parties)

Furthermore, the stipulations do not restrict Mosquitto's right to recover an amount exceeding the limitation fund. The case law is well-settled that a party seeking dissolution of a stay need not concede the shipowner's stipulation of value. However, even in cases where this value is disputed, plaintiffs must agree to limit their recovery. *See In Re Two "RI" Dilling Co., Inc., 943 F.2d 576, 577 (5th Cir.1991)* (plaintiffs properly stipulated that no judgment would be enforced above the valuation of the vessel and freight contained in the complaint). *See also Magnolia Marine Transport v. Laplace Towing Corp., 964 F.2d 1571, 1575 (5th Cir.1992)* (to be sufficient, stipulations must state that no judgment will be asserted in excess of the value of the limitation fund). Despite Mosquitto's acknowledgement of the exclusive jurisdiction of the admiralty court with respect to limitation issues, she has not agreed to restrict any recovery she may receive pursuant to state-law.

In sum, Mosquitto's failure to bring all necessary parties into the agreement and to limit the amount of potential relief that she stands to gain leaves A. & J. inadequately protected. Therefore, the court denies the motion to dissolve the stay.

C. Additional Requests for Alternative Relief

Lastly, the court turns its attention to Mosquitto's requests for an order vacating the limitation court's acceptance of the Letter of Undertaking and requiring deposit of approved security. The court denies each of these requests.

The court's refusal to vacate the Letter of Undertaking and order the deposit of cash or bond as security is based on the same reasons that led the court to deny summary judgment on this issue. Given the elasticity of Rule F's language, the court's discretion to decide security issues, and the uneven application of the objection-exception, the court finds that prior judicial approval of the Letter of Undertaking was proper.

*6 With respect to Mosquito's request for adjustment of the limitation fund under Rule F(7), the court finds that it does possess the authority to grant such relief and that such relief may be appropriate in this case. Rule F(7) provides that claimants may by motion demand that security be increased on the ground that it is less than the value of the plaintiff's interest in the casualty loss and that "[t]hereupon the court shall cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight." This language suggests that once a claimant has filed a motion under this section, the court has a non-discretionary duty to re-examine the sufficiency of the limitation fund.

In *Luhr Bros. Inc. V. Gagnard*, 765 F.Supp. 1264, 1269 (W.D.La.1991), the court elaborated on its role in such matters, observing that "[n]either the filing of a security bond nor the transfer to the court of the vessel and her freight precludes the court's independent evaluation of the adequacy of such security." Thus, the court's authority to entertain Mosquitto's request is clear.

The court wishes to set up a status conference with opposing counsel to resolve other issues that the Rule F(7) motion raises. Specifically, the court needs to select an appropriate method for the appraisement of A. & J.'s interest, determine the extent of such appraisement, and decide which party or parties shall bear the costs.

Accordingly, for the reasons stated,

IT IS ORDERED that the Motion for Summary Judgment and Alternative Reliefs, with the exception of the Request for Adjustment of the Limitation Fund, filed on behalf of Respondent Pearl Bodden de Mosquitto is hereby DENIED.

IT IS FURTHER ORDERED that a status conference be set up to resolve issues raised by Respondent's Request for Adjustment of the Limitation Fund.

E.D.La.,1997.
Matter of A. & J. Towing, Inc.
Not Reported in F.Supp., 1997 WL 289396 (E.D.La.)


Motions, Pleadings and Filings (Back to top)

• 2:97CV00548 (Docket) (Feb. 24, 1997)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713396 (E.D.La.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Noor Begum KARIM, et al.

v.

FINCH SHIPPING COMPANY, et al.

No. Civ.A. 95-4169.

Oct. 6, 1998.

*ORDER AND REASONS*

FALLON, J.

  **\*1** Before the Court is the motion of plaintiffs, Noor Begum Karim, wife of/and Fazal Karim, to order defendant and complainant-in-limitation, Finch Shipping Co., Ltd. ("Finch"), to substitute a corporate surety bond in place of the letter of undertaking posted as surety for Finch by Ocean Marine Mutual Protection & Indemnity Association, Ltd. ("Ocean Marine"). Also pending before the Court is its Order that Finch Shipping show cause why it should not be directed to substitute bond or supplement Ocean Marine's letter of undertaking. For the following reasons, plaintiffs' motion to substitute a surety bond for the letter of undertaking is GRANTED, and Finch is HEREBY ORDERED to provide additional security to supplement or replace Ocean Marine's letter of undertaking.

### I. BACKGROUND

  This case arose as a result of personal injuries suffered by plaintiff Fazal Karim on the high seas. After plaintiffs brought an action against Finch and others in Louisiana State Court, Finch filed an action in this Court seeking exoneration from or limitation of its liability. As security against an adverse judgment, Finch was allowed to post a letter of undertaking executed by Ocean Marine, in the amount of $3,500,000.00. Upon plaintiffs'/claimants' motion, the Court increased the required security to $5,700,000.00.

  Plaintiffs/claimants then moved the Court to require security in the form of a surety bond in lieu of Ocean Marine's letter of undertaking. They maintain, *inter alia,* that Ocean Marine cannot be trusted to honor its letter of undertaking. In addition to a troublesome Standard & Poor report, plaintiffs allege that Ocean Marine has a history of ignoring federal court judgments, and dishonoring its posted letters of undertaking. Particularly, plaintiffs cite *Deras v. M/V EL FRIO,* No. 86-2043, United States District Court, Southern District of Florida, as precedent for this behavior. Finch maintains that Ocean Marine's letter of undertaking is adequate security. In an Order and Reasons dated August 11, 1998, the Court directed Finch to show cause why it should not be required to substitute bond or supplement the letter of undertaking.

  On September 16, 1998 the Court heard oral argument on the plaintiffs' motion and on Finch's response to the Order to show cause. At that time, the parties indicated to the Court that they might be able to reach a mutually agreeable arrangement. The Court gave the parties two weeks, or until September 30, 1998, to negotiate an agreement or to inform the Court if one were not possible. On October 5, 1998 the Court received a letter from the plaintiffs, dated October 2, 1998, indicating that no resolution has occurred.

### II. ANALYSIS

Supplemental Rule F of the Federal Rules of Civil Procedure provides that, in limitation of liability proceedings, "[t]he owner ... shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, as the court may from time to time fix as necessary...." Supp. Fed.R.Civ.P. F(1)(a). The Court has an "absolute right to determine what constitutes approved security." *Matter of A & J Towing, Inc.,* 1997 WL 289396,*2 (E.D.La) (citations and internal quotations omitted).

**\*2** In this case, plaintiffs have raised questions as to the reliability of the security provided by Ocean Marine's letter of undertaking. Specifically, claimants question Ocean Marine's good faith in light of its alleged actions in the Florida litigation referenced above. Finch maintains that the cost of obtaining a surety bond is excessive, and would make this litigation unduly burdensome. The gravity of plaintiffs' allegations, coupled with the parties' failure to reach a mutual agreement, militates toward a requirement of substitute or additional security.

In view of the facts, the Court has concerns about the stability and reliability of the current letter of undertaking proffered by Ocean Marine. Consequently, the defendants are directed to provide additional security within 30 days of this Order.

III. CONCLUSION
For the above reasons, plaintiffs' motion to substitute surety is GRANTED, and Finch is HEREBY ORDERED to substitute or supplement Ocean Marine's letter of undertaking with an additional letter of undertaking, surety agreement, surety bond, or some other means of security which, though less economically burdensome, shall be equally secure, within a period of 30 days from the date of this Order.

E.D.La.,1998.
Karim v. Finch Shipping Co.
Not Reported in F.Supp.2d, 1998 WL 713396 (E.D.La.)


Motions, Pleadings and Filings (Back to top)

• 2002 WL 32999315 (Trial Motion, Memorandum and Affidavit) Affidavit (Sep. 30, 2002) Original Image of this Document (PDF)
• 2000 WL 34611024 (Trial Motion, Memorandum and Affidavit) Motion for New Trial and/or Reconsideration or, in the Aldternative, Amendment of Judgment (Apr. 28, 2000) Original Image of this Document (PDF)
• 2000 WL 34609371 (Expert Trial Transcript) Testimony of Bhiahma Kumar Agnihorti (Jan. 24, 2000)
• 2000 WL 34609372 (Expert Deposition) Videotaped Deposition of: Donald P. Maxwell, Jr., M.D. (Jan. 20, 2000)
• 2000 WL 34611025 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum Regarding the Issue of Choice of Law (Jan. 14, 2000) Original Image of this Document (PDF)
• 1999 WL 33997137 (Partial Expert Testimony) Deposition of: Donald J. Gordillo, M.D. (Nov. 8, 1999)
• 1996 WL 33689047 (Trial Pleading) Third Party Complaint (Oct. 8, 1996) Original Image of this Document (PDF)
• 1996 WL 33688853 (Expert Report and Affidavit) (Report or Affidavit of Donald P. Maxwell Jr., M.D., F.A.C.S.) (Jun. 20, 1996)
• 1995 WL 17223085 (Trial Pleading) Seaman's in Personam and in Rem Complaint for Damages (Dec. 15, 1995) Original Image of this Document (PDF)
• 1995 WL 17225886 (Expert Trial Transcript) (Transcript) (Dec. 15, 1995)
• 2:95CV04169 (Docket) (Dec. 15, 1995)
• 1995 WL 17222892 (Expert Report and Affidavit) (Report or Affidavit of Donald J. Gordillo, M.D.) (Dec. 8, 1995)
• 1995 WL 17222893 (Expert Report and Affidavit) (Report or Affidavit of John Watermeier, M.D.) (Sep. 13, 1995)

- 1995 WL 17222891 (Expert Report and Affidavit) (Report or Affidavit of Donald Maxwell, M.D.) (1995)
- 1995 WL 17223083 (Trial Pleading) Trial Pleading (1995) ▓ Original Image of this Document (PDF)
- 1995 WL 17223084 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for New Trial and/or Reconsideration or, in the Alternative, Amendment of Judgement (1995) ▓ Original Image of this Document (PDF)
- 1995 WL 17223087 (Trial Motion, Memorandum and Affidavit) Affidavit (1995) ▓ Original Image of this Document (PDF)

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.