UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMIE SHIPPING INC., PUFFIN MARINE          :    08 CV 6882 (JFK)
INVESTMENTS SA and BANK MANDIRI             :
(EUROPE) LTD. UK,                           :    ECF CASE
                                            :
                        Plaintiffs,       :
                                            :
   - against -                             :
                                            :
OMAN INSURANCE CO.,                         :
                                            :
                        Defendant.        :
------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION SEEKING TO COMPEL PLAINTIFFS' TO ACCEPT SUBSTITUTE SECURITY

Plaintiffs, JAMIE SHIPPING INC., PUFFIN MARINE INVESTMENTS SA, and BANK MANDIRI (EUROPE) LTD. UK (collectively "Plaintiffs"), by and through their attorneys, Lennon, Murphy & Lennon, LLC, submit the within Memorandum of Law in Opposition to the motion of Defendant, OMAN INSURANCE CO. ("Defendant"), seeking to compel Plaintiffs to accept a Mashreq Bank PLC ("Mashreq") irrevocable letter of credit as substitute security under Rule E(5)(a) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").

For the avoidance of any doubt, Plaintiffs agree that Defendant has accurately set forth the procedural posture and the communications between counsel in the Affidavit of Christopher Carlsen in Support of Order to Show Cause. *See Carlsen Affidavit at ¶¶ 3-11*. Further, Plaintiffs do not contest that Defendant is provided the opportunity under Supplemental Rule E(4)(f) and Local Rule E.1 for a prompt post-attachment hearing. Finally, it is common ground between the

parties that the Court is to be guided by Supplemental Rule E(5)(a) insofar as the approval, or rejection, of the form of substitute security proposed by Defendant.

Defendant's assertion that Plaintiffs should be compelled to accept the Mashreq letter of credit under Supplemental Rule E(5)(a) is unfounded. There is no case that has been decided in the Southern District of New York which has held that a Rule B plaintiff may be compelled to accept a letter of credit as substitute security as envisioned by Supplemental Rule E(5)(a). While a Rule B plaintiff may agree to accept a letter of credit as substitute security this does not alter the fact that it may not be compelled to accept the same as substitute security.

Further, and perhaps not appreciated by Defendant, is that Local Rule 65.1.1(b) also serves to guide this Court in its review of proposed substitute security. Local Rule 65.1.1(b) provides as follows:

> (b) Except as otherwise provided by law, every bond, undertaking or stipulation must be secured by: (1) the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation; or (2) the undertaking of a guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury; or (3) the undertaking or guaranty of two individual residents of the district in which the case is pending, each of whom owns real or personal property within the district worth double the amount of the bond, undertaking or stipulation, over all his debts or her debts and liabilities, and over all obligations assumed by said surety on other bonds, undertakings or stipulations, and exclusive of all legal exemptions.

*See Local Civil Rule 65.1.1(b)*.

Defendant relies on three cases decided in other districts as support for its position. However, those cases did <u>not</u> involve Supplemental Rule B and, further, upon review, do not truly support Defendant's position.

*In the Matter of Slobodna Plovidba*, 1987 WL 20043, 1987 U.S. Dist. Lexis 16887 (W.D. Mich. 1987) is cited for the proposition that it is within the discretion of the district court to

determine what constitutes adequate substitute security. *See Defendant Memorandum of Law at 4.* However, the *Slobodna Plovidba* case differs from this action in the following respects:

- The decision sprang from a motion to replace a letter of undertaking ("LOU") with a surety bond. **Defendant here seeks to replace cash with a standy letter of credit.**
- The case concerned a limitation action commenced under 46 U.S.C. § 183(a) to limit liability towards the estate of three fishermen who had lost their lives in a collision involving petitioner's vessel who sought protection under a limitation of liability scheme whereby it posted an LOU based on the value of its vessel, plus freight, costs and interest. **This is starkly different from Plaintiff having obtained an order of maritime attachment and successfully securing its claim by virtue of attachment of Defendant's property within the district.**
- The court assessed the application under Supplemental Rule F. **Defendant's application here is guided by Supplemental Rule E(5)(a).**
- Although the court discussed a local rule that sounds strikingly similar to Local Rule 65.1.1(b), it found it "... highly doubtful," without explaining why, such rule was applicable to the "... specialized area of admiralty." *In the Matter of Slobodna Plovidba*, 1987 U.S. Dist. Lexis 16887, *3-4.
- The court held that requiring the petitioner to file a surety bond would have been tantamount to ordering a foreign sovereign to expend funds. **Defendant is not a foreign sovereign or instrumentality thereof.**

This Court is obviously not bound to follow the Western District of Michigan's decision in *Slobodna Plovidba* and because the case involved significantly different facts and was assessed under a different Supplemental Rule it cannot be said that he holding is even persuasive authority for this Court to consider.

Defendant also relies on *In the Matter of A& J Towing, Inc.*, 1997 WL 289396, 1997 U.S. Dist. LEXIS 7878 (E.D. La. 1997) in which the Eastern District of Louisiana did not agree that Supplemental Rule F contemplated only the provision of cash and bonds and instead affirmed its earlier decision to allow a vessel owner to post an LOU in another case involving wrongful death allegations and limitation of liability. Hence, *A& J Towing* may be on all fours with *Slobodna Plovidba* but its facts do not square with those before this Court and is again not binding authority and at best, persuasive authority, although that is denied.

3

Finally, Defendant relies on *Karim v. Finch Shipping Co.*, 1998 WL 713396, 1998 U.S. Dist. LEXIS 16097 (E.D. La. 1997) in support of its position that a district court has an "absolute right" to determine what is approved security. *See Defendant's Memorandum of Law at 4.* Yet, this case again concerns proceedings under Supplemental Rule F in which it is the vessel owner that must first obtain court approval of the proposed limitation fund, the composition of which said fund is thereafter subject to requested revision by the claimants. It is interesting to note that in *Finch Shipping* the district court was sufficiently concerned about the surety – the vessel owner's insurance protection and indemnity underwriters – that it ordered substitute or additional security. *See Karim v Finch Shipping Co.*, 1998 U.S. Dist. LEXIS 16097, *5.

This Court should not be guided by the decisions relied on by Defendant all of which were issued outside of this district and deal with security obtained not pursuant to Supplemental Rule B but rather under Supplemental Rule F. Rather, this Court should be guided Honorable Judge Gerard E. Lynch's recent decision in *Pancoast Trading S.A. v. Eurograni S.r.l.*, 2008 U.S. Dist. LEXIS 4224, 2008 A.M.C. 859 (S.D.N.Y. 2008) (copy of decision attached hereto as Exhibit 1).

In *Pancoast*, Judge Lynch sided with the defendant on its application for counter-security under Supplemental Rule E(7)(a), holding that plaintiff would not be permitted to post such counter-security in the form of an LOU since the same was not authorized by Local Rule 65.1.1(b). Judge Lynch's decision, in relevant part, provides as follows:

> The Local Rules of this District provide a firm guideline for what constitutes adequate security. Local Rule 65.1.1(b) provides: [citation omitted]. Pancoast provides no persuasive reason – and indeed no reason at all – why security in the form ***demanded*** by the rule is no appropriate in this case. Whether such an LOU is, as Pancoast contends, often accepted by litigants in maritime cases is immaterial. Pancoast has cited no case, and the Court has found none, in which security has been ordered or ruled sufficient by a court where it is not accepted by

4

the opposing party. Local Rule 65.1.1(b) identifies the kinds of undertakings, guarantees or deposits that constitute adequate security where security is required.

*See Pancoast v. Eurograni S.r.l.*, 2008 U.S. Dist. LEXIS 4224, *5 (emphasis added). As explained by Judge Lynch, the requirement of permitted security, where the parties do not agree, is well defined by the Local Rule. The proposed Mashreq Bank letter of credit does not qualify as permitted substitute security under the Local Rule and hence Plaintiffs should not be compelled to accept the same.

Finally, Defendant makes scant commentary regarding the sufficiency of Mashreq Bank as a proposed issuer of a letter of credit. It simply asserts that Mashreq Bank, according to a document obtained from Mashreq's website, has $23 billion in assets and is supervised by the New York State Department of Banking. *See Carlsen Affidavit at ¶ 12, Exhibit F*. Whether Mashreq Bank actually has such assets, whether it is being unduly affected by the global credit crisis, and what its relationship is with Defendant is completely unknown. It should be observed, however, as in *Karim v. Finch Shipping Co.*, concerns regarding the issuer of a security obligation can serve as the basis to require additional or substitute security. *See Karim v. Finch Shipping*, 1998 U.S. Dist. LEXIS 16097, *5.

In conclusion, neither the security proposed, nor Mashreq Bank as the issuer of the same, complies with the requirements of Local Rule 65.1.1(b). The proposed letter of credit is (a) not a deposit of cash or of government bonds; (ii) not from a corporate surety that has a certificate of authority from the Secretary of the Treasury; and (iii) not an undertaking or guaranty of "two individual residents" living within the district owing sufficient real or personal property worth over $7,117,477. As a result, the Mashreq Bank letter of credit should be rejected by this Court as sufficient substitute security

under Supplemental Rule E(5)(a) and Local Rule 65.1.1(b) and the Defendant's motion should be denied.

For all of the foregoing reasons, Defendant's motion to compel Plaintiffs to accept substitute security should be denied along and together with all other relief granted to the Plaintiff which the Court deems just and appropriate.

Dated: August 29, 2008
       New York, NY

                                      The Plaintiffs,
                                      JAMIE SHIPPING INC.
                                      PUFFIN MARINE INVESTMENTS SA
                                      BANK MANDIRI (EUROPE) LTD. UK

By: _____
                                      Kevin J. Lennon
                                      Anne C. LeVasseur

LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 – facsimile
kjl@lenmur.com
acl@lenmur.com

## **AFFIRMATION OF SERVICE**

I hereby certify that on August 29, 2008, a copy of the foregoing MEMORANDUM OF LAW was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

_____
Kevin J. Lennon

# EXHIBIT 1

*Pancoast Trading S.A. v. Eurograni S.r.l.*, 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. 2008)

LexisNexis® Total Research System                                      Switch Client | Preferences | Sign Out | ?Help
My Lexis™  Search  Research Tasks  Get a Document  Shepard's®  Alerts  Total Litigator  Transactional Advisor  Counsel Selector  Dossier | History

Source: Legal > /.../ > Admiralty Cases, Federal and State
Terms: tisdale and saville (Edit Search | Suggest Terms for My Search)

↓Select for FOCUS™ or Delivery

2008 U.S. Dist. LEXIS 4224, *; 2008 AMC 859

PANCOAST TRADING S.A., Plaintiff, -against- EUROGRANI S.r.l., Defendant.

07 Civ. 8581 (GEL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2008 U.S. Dist. LEXIS 4224; 2008 AMC 859

January 22, 2008, Decided
January 22, 2008, Filed

**CORE TERMS:** countersecurity, counterclaim, attachment, maritime, cash deposit, demanded, surety, promise to pay, original action, persuasive reason, adequate security, arbitration, guaranty, leverage, deposit, footing, bargaining

**COUNSEL:** [*1] Claurisse Campanale-Orozco and Thomas L. Tisdale, Tisdale Law Offices, LLC, New York, NY, for plaintiff.

Kipp C. Leland and James A. Saville, Jr., Hill Rivkins & Hayden LLP, New York, NY, for defendant.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION**

*OPINION AND ORDER*

GERARD E. LYNCH, *District Judge*

In this maritime action, the Court entered an order granting a maritime attachment pursuant to Rule B, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Fed. R. Civ. P., at the request of plaintiff Pancoast Trading S.A. The parties are currently preparing for (or are already involved in) arbitration proceedings in London. Defendant Eurograni S.r.l. now seeks countersecurity pursuant to Rule E(7)(a) of the same rules for the counterclaim that it intends to raise against Pancoast in the London arbitration. The motion will be granted in part.

Pancoast concedes that under the rule, Eurograni is indeed entitled to countersecurity. (P. Opp. 2.) The dispute concerns the nature and amount of the countersecurity to be awarded. Pancoast has proffered a Letter of Undertaking ("LOU") as countersecurity, arguing that such a letter should be sufficient, and also [*2] argues that the countersecurity should be limited to the amount that it has attached in support of its own claim, not the amount of Eurograni's counterclaim, which is slightly larger. (*Id.* at 2-3.) Eurograni responds that the LOU is insufficient, constituting no more than an "IOU" backed only by Pancoast's promise to pay (D. Reply 3), and that it should be awarded countersecurity in cash, since that is the nature of the security obtained by Pancoast pursuant to its attachment, (*Id.* at 5). It also argues that it is entitled to full security for its counterclaim. (*Id.* at 6.)

Rule E(7)(a) provides that:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court[,] for cause shown, directs otherwise.

The text of the rule itself largely disposes of one of Pancoast's objections. The rule provides that the plaintiff must give security "for damages demanded in the counterclaim," and does not limit the countersecurity to the amount of [*3] the security provided by the defendant to secure the plaintiff's claim. While the authorization to the court to "direct[ ] otherwise" "for cause shown" confers substantial discretion on the court, see *North Offshore AS v. Rolv Berg Drive AS*, No. 07 Civ. 3095, 2007 2007 U.S. Dist. LEXIS 87648, WL 4233014, at *2 (S.D.N.Y. Nov. 29, 2007), Pancoast suggests no persuasive reason to depart from the rule's general admonition. Ordinarily, and in this case (so far as can be determined on the record before the Court), the limitation suggested by Pancoast would make no sense. The rule seeks to provide security of recovery against the event of a successful claim, as a substitute for the actual seizure of vessels, which otherwise would be the only means to secure an eventual judgment in the far-flung and highly mobile world of maritime commerce. Had Eurograni filed first, it would surely have been entitled to a Rule B attachment fully securing its claim. A party with a small claim should not be enabled to defeat full security for a counterparty's larger claim simply by winning the race to the courthouse.

Rule E(7)(a) does not itself speak to the nature of the countersecurity to be awarded, however. In the absence of governing [*4] language, Pancoast suggests that its proffered LOU is sufficient, while Eurograni argues that it is entitled to security in the form of cash posted to an escrow account, since that is the nature of the security now held by Pancoast for its claim, as a result of the

attachment it obtained. Neither party's position is persuasive.

It is clear that the LOU is not sufficient. As Eurograni points out, such an undertaking provides no real guarantee of payment, consisting simply of a promise to pay. The Local Rules of this District in provide a firm guideline for what constitutes adequate security. Local Rule 65.1.1(b) provides:

> Except as otherwise provided by law, every bond, undertaking or stipulation must be secured by: (1) the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation; or (2) the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury; or (3) the undertaking or guaranty of two individual residents of the district in which the case is pending, each of whom owns real or personal property within the district worth double the amount of the bond, undertaking or stipulation, over all his [*5] or her debts and liabilities, and over all obligations assumed by said surety on other bonds, undertakings or stipulations, and exclusive of all legal exemptions.

Pancoast provides no persuasive reason -- and indeed no reason at all -- why security in the form demanded by the rule is not appropriate in this case. Whether such an LOU is, as Pancoast contends, often accepted by litigants in maritime cases is immaterial. Pancoast has cited no case, and the Court has found none, in which such security has been ordered or ruled sufficient by a court where it is not accepted by the opposing party. Local Rule 65.1.1(b) identifies the kinds of undertakings, guarantees or deposits that constitute adequate security where security is required.

The Court also rejects Eurograni's suggestion that only one of the alternatives specified by the rule -- a cash deposit -- is acceptable under the circumstances of this case. As Eurograni correctly notes, in exercising the discretion provided by Rule E(7)(a), courts should be guided by "the core purpose of the countersecurity rule," which is "to place the parties on an even footing." *Finecom Shipping v. Multi Trade Enters. AG*, No. 05 Civ. 6695, 2005 U.S. Dist. LEXIS 25761, 2005 WL 2838611, at *1 (S.D.N.Y. Oct. 24, 2005), [*6] citing *Wash.-S. Nav. Co. v. Balt. & Phila. Steamboat Co.*, 263 U.S. 629, 638-39, 44 S. Ct. 220, 68 L. Ed. 480 (1924). Eurograni argues that since Pancoast holds $ 303,606.92 of Eurograni's cash, as a result of the attachment, any form of security for the counterclaim short of an actual cash deposit would give Pancoast "unfair leverage in the action," *Finecom Shipping*, 2005 U.S. Dist. LEXIS 25761, 2005 WL 2838611, at *1, in violation of this principle.

But the rule's effort "to place the parties on an even footing" by giving each party in a case with claims and counterclaims equivalent security cannot be pressed so far. It is not the Court's obligation to attempt to balance the bargaining positions of the parties. Such a calibration would in any event be impossible. Even putting aside all the other factors that bear on the respective strengths of parties attempting to settle a dispute, and focusing solely on the question of security, a wealthy party may be better able to afford a cash deposit than a poorer opponent is able to afford the expense of a surety bond. Courts have little ability or warrant to attempt to assess the relative bargaining advantages of parties in litigation. The point of the rule is to make sure that when parties to the [*7] same transaction assert claims against each other arising from that transaction, the parties should both be fully secured, where possible, and neither should have the additional leverage of holding security, while the other must wonder if a judgment in its favor would ever be paid. Nothing further is required by the rule.

Accordingly, it is hereby ORDERED that Pancoast provide Eurograni countersecurity, in the amount of $ 325,185.15, in a form compliant with Local Rule 65.1.1, on or before February 5, 2008.

SO ORDERED

Dated: New York, New York

January 22, 2007

/s/ Gerard E. Lynch

GERARD E. LYNCH

United States District Judge

---

Source: Legal > / ... / > Admiralty Cases, Federal and State
Terms: tisdale and saville (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, August 29, 2008 - 11:15 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 LexisNexis®  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.