```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
JAIMIE SHIPPING, INC., PUFFIN MARINE  :
INVESTMENTS SA and BANK MANDIRI       :
(EUROPE) LTD., UK,                    :
                        Plaintiffs,   :
                                      :
         - against -                  :  08 Civ. 6882(JFK)
                                      :  OPINION & ORDER
OMAN INSURANCE COMPANY                :
                        Defendant.    :
-----------------------------------X
```

APPEARANCES:

    For Plaintiffs:
        LENNON, MURPHY & LENNON
        420 Lexington Avenue
        New York, New York 10170
           Of Counsel: Kevin Lennon, Esq.

    For Defendant:
        CLYDE & CO., US LLP.
        405 Lexington Avenue
        New York, New York 10174
           Of Counsel: Christopher Carlsen, Esq.

**JOHN F. KEENAN, United States District Judge.**

**JOHN F. KEENAN**, **United States District Judge**:

In this admiralty case, the Court entered an order granting a maritime attachment against Defendant Oman Insurance Company ("Oman" or the "Defendant") in favor of Plaintiffs Jaimie Shipping, Inc., Puffin Marine Investments SA, and Bank Mandiri (Europe), Ltd., UK (collectively, "Plaintiffs"), pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). Oman has moved by order to show cause, pursuant to Supplemental Rule E(5)(a), for an order compelling Plaintiffs to release the funds that have been attached and accept as substitute security an irrevocable letter of credit from Mashreq Bank, a bank of the United Arab Emirates. For the reasons that follow, Oman's motion is denied.

## BACKGROUND

Plaintiffs are the foreign owners and mortgage-holders of two vessels, the M/V Canadian Challenger and the M/V Agate Islands. Plaintiffs obtained from Oman a total of $2.25 million in marine hull insurance for both vessels. In July 2006, while being towed from Cuba to India, the vessels encountered heavy weather, collided into each other, sustained severe hull damage, and later sank. Plaintiffs allege that Oman has failed to pay on the insurance policy. Pursuant to a forum clause in the insurance policy, Plaintiffs commenced proceedings in London's High Court for recovery of insurance that is allegedly due as a result of the loss of the

M/V Canadian Challenger and anticipate commencing proceedings in the High Court for recovery of the insurance proceeds allegedly due as a result of the loss of the M/V Agate Islands.

On August 11, 2008, Plaintiffs filed a verified complaint in this Court, pursuant to Rule B of the Supplemental Rules, seeking to obtain jurisdiction over Oman and security for its claims in London in the amount of $3,558,738.50, comprising the amount of the insurance proceeds allegedly due to Plaintiffs plus anticipated interest and attorneys' fees. The same day, the Court issued an order of maritime attachment for the amount sought by Plaintiffs, who subsequently obtained an attachment in the full amount.

Oman has "offered to provide to plaintiffs an irrevocable letter of credit issued by Mashreq Bank as substitute security for the full amount of the attached funds which will fully protect plaintiffs' interest in this litigation." (Def. Mem. at 2-3.) Plaintiffs rejected the offer of substitute security. On August 22, 2008, Judge Crotty, sitting in the Emergency Relief Part, signed Oman's proposed order to show cause why the Court should not grant Oman's motion to compel Plaintiffs to accept the substitute security. The Court heard oral argument on September 4, 2008.

**DISCUSSION**

Supplemental Rule E(4)(f) provides for a "prompt hearing," after the issuance of a Rule B maritime attachment, at which the plaintiff must "show why the arrest or attachment should not be

3

vacated or other relief granted consistent with these rules." Oman requests "other relief" in the form of an order compelling Plaintiffs to return the cash that was attached as security and accept instead the irrevocable letter of credit from Mashreq Bank. Supplemental Rule E(5)(a), which the parties agree is the applicable rule in this matter, provides in relevant part that "[w]henever process of maritime attachment and garnishment or process in rem is issued, the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court."

Although Supplemental Rule E(5)(a) does not define the form that the "security" posted by a defendant must take, Plaintiffs rightly observe that Rule 65.1.1(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") sets forth the requirements for the posting of a bond. The rule, entitled "Sureties," provides in relevant part as follows:

> Except as otherwise provided by law, every bond, undertaking or stipulation must be secured by: (1) the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation; or (2) the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury; or (3) the undertaking or guaranty of two individual residents of the district in which the case is pending, each of whom owns real or personal property within the district worth double the amount of the bond, undertaking or stipulation, over all his or her debts and liabilities,

4

and over all obligations assumed by said surety on other
bonds, undertakings or stipulations, and exclusive of all
legal exemptions.

Local Rule 65.1.1(b). As Judge Lynch recently observed in <u>Pancoast Trading S.A. v. Eurograni S.r.l.</u>, No. 07 Civ. 8581, 2008 U.S. Dist. LEXIS 4224, at *4 (S.D.N.Y. Jan. 22, 2008), Local Rule 65.1.1(b) "provide[s] a firm guideline for what constitutes adequate security." In <u>Pancoast</u>, the plaintiff sought to post counter-security, pursuant to Supplemental Rule E(7), in the form of a letter of undertaking (an "LOU"). The defendant rejected the proposed LOU, claiming that it was "insufficient, constituting no more than an 'IOU' backed only by [plaintiff]'s promise to pay." <u>Id.</u> at *2. Judge Lynch found that Local Rule 65.1.1(b) controlled, noting that the plaintiff

> provides no persuasive reason – and indeed no reason at
> all – why security in the form demanded by the rule is
> not appropriate in this case. . . . [Plaintiff] has cited
> no case, and the Court has found none, in which such
> security [in the form proposed by plaintiff] has been
> ordered or ruled sufficient by a court where it is not
> accepted by the opposing party. <u>Local Rule 65.1.1(b)
> identifies the kinds of undertakings, guarantees or
> deposits that constitute adequate security where security
> is required</u>.

<u>Id.</u> at *5 (emphasis added). Accordingly, Judge Lynch refused to compel the defendant to accept plaintiff's proposed LOU as counter-security.

Oman protests that Pancoast is distinguishable from the present case because, in Pancoast, the court's rejection of the proposed LOU was predicated on the finding that the LOU was inadequate. Here, Oman contends, the proposed form of security is not merely an "'IOU' backed only by [Oman's] promise to pay," but rather a reliable letter of credit from an international bank, with offices in both London and New York and over $23 billion in assets. Thus, Oman asserts, in this case – unlike Pancoast – the adequacy of the proposed security is undisputed and the Court need not look to Local Rule 65.1.1 for guidance.

Contrary to Oman's argument, however, when an adverse party objects to a form of security, the dispositive question is not whether the proposed security carries the hallmarks of reliability; it is whether the form of security comports with the requirements of the Local Rule. In In re Compania Naviera Marasia S. A., 466 F. Supp. 900 (S.D.N.Y. 1979) (Haight, J.), which concerned the ex parte furnishing of security by a shipowner, pursuant to Supplemental Rule F in a limitation on liability action, the shipowner proposed that the court accept security in the form of an LOU from a British marine insurance company. Although there was no question regarding the adequacy of the proposed security, Judge Haight observed that Local Rule 65.1.1(b) (then General Rule 31[1]) set forth the exclusive

---

[1] General Rule 31, which was virtually identical to current Local Rule 65.1.1(b), provided as follows:

6

forms of security that were authorized when the parties did not stipulate as to an approved form. The shipowner's proposed surety was not executed by an authorized domestic surety company within the meaning of the local rule. The court acknowledged that it was customary to accept security in the form proposed by the shipowner because such "underwriters' letters are almost routinely exchanged in litigation between shipowners or cargo interests and shipowners, because the marine insurance world is a relatively small one, the parties, counsel and their underwriters know each other well, and are prepared to enter into such consensual arrangements so as to minimize inconvenience and expense." Id. at 902. The court found that there was no reason not to accept the foreign surety's undertaking in light of the early stage of the litigation and the absence of any protest by potential claimants. Id. However, Judge Haight directed that, in the event any claimant were to object to the form of security, the shipowner was required to "cause security

---

Except as otherwise provided by law, every bond, undertaking or stipulation must (1) be secured by the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation, or be secured by (2) the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury, or (3) the undertaking or guaranty of two individual residents of the Southern or Eastern Districts of New York, each of whom owns real or personal property within such districts worth double the amount of the bond, undertaking or stipulation, over all his debts and liabilities, and over all obligations assumed by him on other bonds, undertakings, or stipulations, and exclusive of all legal exemptions.

7

to be posted in the form provided by General Rule 31 of this Court." Id. at 903. This was because claimants had "an absolute right" to demand security "in accordance with the requirements of General Rule 31 of this Court." Id; see also Akermanis v. Sea-Land Servs., No. 77 Civ. 6131, 1982 U.S. Dist. LEXIS 9292 (S.D.N.Y. Jan. 25, 1982) (Haight, J.) ("Unless plaintiff consents to do so--and here he does not--defendant cannot require him to accept security in a form other than called for by the [local] rule."). In Akermanis, the defendant, who had offered to provide plaintiffs with security in a form that did not comport with Local Rule 65.1.1 (then Local Rule 38), relied on Judge Haight's earlier decision In re Compania Naviera, where the court had provisionally allowed the shipowner to provide an alternate form of security. Judge Haight found the defendant's reliance on In re Compania Naviera to be misplaced, stating that "[t]he rationale of [In re Compania Naviera] was that any adverse claimant could, if he so chose, reject a letter of guarantee tendered by foreign underwriters (no matter how well-established or renowned), and insist upon the giving of security in strict conformity with our local rules." Id. at *2 (emphasis added).

Here, it is undisputed that Mashreq Bank is not an approved surety within the meaning of Local Rule 65.1.1(b) and that the proposed letter of credit therefore fails to comply with the rule. Thus, even assuming that Mashreq Bank's undertaking would provide Plaintiffs with adequate security, Plaintiffs are entitled

8

to "insist upon the giving of security in strict conformity with our local rules," and thus cannot be compelled to accept the letter of credit from an unauthorized foreign surety.

The conclusions reached by Judges Lynch and Haight in the aforementioned cases are supported by the language of Rule A.1(b) of the Local Admiralty and Maritime Rules for the Southern and Eastern Districts of New York (the "Local Admiralty Rules"), which provides that the "Local Civil Rules also apply to the procedure in such [admiralty] claims and proceedings, except to the extent that they are inconsistent with the Supplemental Rules or with these Local Admiralty and Maritime Rules." Local Admiralty Rule A.1(b). Oman has failed to show that there is any inconsistency between Local Rule 65.1.1(b) and the Supplemental Rules or the Local Admiralty Rules. Although Oman contends that Local Rule 65.1.1(b) is at odds with Supplemental Rule E(5)(f), it has offered nothing more than conclusory arguments regarding the "unfettered" right of a defendant in a maritime action to post any form of security it wants to post, as long as the court, in its discretion, deems the security to be "adequate." In support of this argument, Oman relies on a phrase from the Second Circuit's decision in <u>Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 444 (2d Cir. 2006), two cases from the Eastern District of Louisiana, and one case from the Western District of Michigan.

9

Oman's reliance on Aqua Stoli is unavailing. Although the Second Circuit did note, in that case, that a defendant, pursuant to Supplemental Rule E(5)(a), "has the option of relieving itself of this particular attachment by posting other security," there is no indication that the Aqua Stoli court was referencing any form of security apart from those forms authorized by the applicable local rule. In Aqua Stoli, the defendant had given cash security, in the form of Electronic Funds Transfers (EFTs). The "other security" that the defendant could post, to relieve itself of the burden of the cash security, could take the form of a bond or an undertaking by a surety approved by the Department of Treasury, as provided in Local Rule 65.1.1(b). There simply is no indication that the Second Circuit, in referring to "other security," actually meant "any form of security at all as long as the court decides that it is 'adequate.'"

Oman's reliance on the three out-of-circuit cases is also misplaced. Oman points to two cases, concerning offers of security pursuant to Rule F in limitation on liability actions, from the Eastern District of Louisiana, In the Matter of A & J Towing, Inc., No. 97 Civ. 0548, 1997 U.S. Dist. LEXIS 7878 (E.D. La. May 29, 1997), Karim v. Finch Shipping, No. 95 Civ. 4169, 1998 U.S. Dist. LEXIS 16097 (E.D. La. Oct. 6, 1998), in support of the proposition that a court has the discretion to determine whether a proposed form of security adequately protects a claimant's interests. While it

10

is true that the Eastern District of Louisiana asserted that a district court has the "'absolute right" to determine what constitutes approved security,'" Karim, 1998 U.S. Dist. LEXIS 16097, at *4 (quoting A & J Towing, 1997 U.S. Dist. LEXIS 7878 , at *6), in neither case did the court refer to any local rule, such as the Southern District's Local Rule 65.1.1(b), that establishes requirements for the form of posted security.

A more recent case from the Eastern District of Louisiana, which – as here – involved an offer of security in the context of Supplemental Rule E(5)(a), rather than Rule F, did in fact expressly reference that district's local rule in deciding a defendant's motion to post an alternate form of security. In Thyssen, Inc. v. M/V Sena Deniz, No. 00 Civ. 3445, 2000 U.S. Dist. LEXIS 17511 (E.D. La. Nov. 30, 2000), the defendant, whose ship had been arrested, moved pursuant to Rule E(5)(a) for the ship's release and to substitute a letter of undertaking from an "unapproved surety" as security. Id. at *2. The court denied the motion, noting that although it was customary in the district for a plaintiff to accept a letter of undertaking as security, "[c]ustom, however, is not always binding," and "'[i]n the Eastern District of Louisiana, the courts ordinarily do not accept a letter of undertaking by an unapproved surety unless the other side agrees to accept it.'" Id. (quoting Koch Refining Co. v. M/V Jennifer Boudreaux, No. 87 Civ 5661, 1993 U.S. Dist. LEXIS 3739, at *8 (E.D. La. Mar. 23, 1993)).

11

The court cited to the district's Local Admiralty Rule 65.1.2, which provided that

> In all cases where the surety on a bond or stipulation for the release of a vessel or other property under seizure is not a corporate surety holding a certificate of authority from the Secretary of the Treasury, and the bond or stipulation is not approved as to amount and nature by the party at whose instance the vessel or other property is detained, or by his or her attorney, the vessel or property shall not be released without an order of a judge, on reasonable notice and contradictorily, approving the surety.

Id. at *2 n.1. Thus, the applicable local rule in the Eastern District of Louisiana provides that an unapproved surety cannot be permitted to post security without a court order. This is in marked contrast to this District's Local Rule 65.1.1(b), which sets forth three authorized forms of security but does not give courts the authority to approve unauthorized forms of security. The Thyssen court concluded that it would "not force an unwilling plaintiff to accept a letter of undertaking from an unauthorized surety in lieu of a bond." Id. at *4. Viewed collectively, Thyssen, A & J Towing, and Karim, merely establish that in the Eastern District of Louisiana, in the event that a proposed form of security is unauthorized under the local rule, the district court has the discretion to decide whether to approve the proposed security. Although A & J Towing and Karim did not expressly address the local rule, the results in those cases, where the courts exercised their discretion to approve the proposed unauthorized forms of security, are in compliance with the Eastern District of Louisiana's local

12

rule concerning sureties. The cases do not establish, as Oman suggests, that a district court may exercise its own discretion in contravention of the applicable local rule.

Oman's reliance on In the Matter of Slobodna Plovidba, No. M86-209, 1987 U.S. Dist. LEXIS 16887 (W.D. Mich. Mar. 26, 1987), is also misplaced. In that case, also a Supplemental Rule F action concerning an action for limitation on liability, the shipowner provided security in the form of an LOU from its British insurance company. Claimants moved to compel the shipowner to substitute a domestic formal surety bond for the bond that had been executed by the shipowner's British company, on the ground that the British company was not an approved surety within the meaning of the local rule for the Western District of Michigan. That rule, like Local Rule 65.1.1(b), requires undertakings to be executed by domestic sureties approved by the Treasury Department. The Slobodna court rejected the claimants' argument, concluding that the applicable local rule was "part of a section of the local rules that addresses 'Actions in General', and it is highly doubtful that it was intended to apply in the specialized area of admiralty. Hence, the court does not believe that [the local rule] should control the question of the adequacy of" the posted security. Id. at *3-4. The court went on to find that the shipowner's British insurer was highly reputable and "there is little realistic probability that [the British insurer] would jeopardize its good name in the marine insurance

13

business by defaulting on an obligation to a government shipowner to pay" the amount of the undertaking. Id. at *6. The court also noted that requiring the posting of substitute security would force the foreign government to incur additional expense and that "[p]rotection of the national fisc" of the foreign government was an important interest. Id. at *7. Accordingly, the court refused to compel the shipowner to substitute the security.

Slobodna, however, is not persuasive. The court's decision rested in large part on its conclusion that the district's local rule did not apply in the "specialized area of admiralty." Unlike the Southern District, the Western District of Michigan does not have a separate set of local admiralty rules and no rule which states, like this District's Admiralty Rule 1.A(b), that the local rules apply in the context of maritime cases. In other words, in the Southern District of New York, unlike the Western District of Michigan, there is authority expressly providing that the local rule concerning sureties does indeed apply in the "specialized area of admiralty."[2]

Oman's other arguments against the application of Local Rule 65.1.1(b) are also unavailing. First, there is no merit to

---

[2] Slobodna is also distinguishable because the holding in that case derived at least in part from the court's finding that the claimants' interest in an alternate form of security did not outweigh the interest of preserving the "fisc" of the foreign-government shipowner. Here, as Plaintiffs rightly point out, Oman is not a foreign government.

14

Oman's contention that the "numbering of Rule 65.1.1 . . . establishes that it was designed to apply to situations such as where a party is required to post security in connection with injunctive relief – rather than the situation where substitute security is being posted in order to release property that was attached under Supplemental Rule B." (Def. Rep. Mem. at 3.) While it may be true, as Oman contends, that Local Rule 65.1.1 "logically refers to" Federal Rules 65 and 65.1, Oman has not shown why this precludes the local rule from operating in the maritime context. As discussed at length above, Local Admiralty Rule A.1(b) contemplates the application of the local rule in the maritime context, and courts of this district have applied Local Rule 65.1.1 in admiralty cases. See Pancoast, 2008 U.S. Dist. LEXIS 4224; In re Compania Naviera, 466 F. Supp. 900. Further, Rule 65.1, which is entitled "Proceedings Against a Surety," expressly references the Supplemental Rules, and thus "by its terms, is applicable to actions under the Supplemental Admiralty and Maritime Rules." Macsteel Int'l USA Corp. v. M/V Ming Propitious, No. 00 Civ. 279, 2003 U.S. Dist. LEXIS 19888, at *17 (E.D.N.Y. 2003), Magistrate's Report and Recommendation.[3] Rule 65.1 has been applied in other contexts where

---

[3] Rule 65.1 provides that a surety must submit to the court's jurisdiction "whenever these rules (including the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) require or allow a party to give security, and security is given through a bond or other undertaking with one or more sureties,"

injunctive relief is not at issue. See, e.g., Aeortrade, Inc. v. Republic of Haiti, 552 F.2d 60 (2d Cir. 1977) (applying Rule 65.1 in the context of a pre-judgment attachment, pursuant to N.Y. C.P.L.R. § 6212); United States v. Salvagno, 314 F. Supp. 2d 115, 118 (N.D.N.Y 2004) (applying Local Rule 65.1.1(b) of the Northern District of New York, which is identical to the Southern District's local rule, to determine appropriateness of form of appearance bond submitted by criminal defendant). Thus, the numbering of the local rule does not preclude its application in the context of a Rule B maritime attachment.

Second, Oman presents no reason why the Court should exercise its discretion to depart from Local Rule 65.1.1(b). While it is true that "the district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked," the court should exercise this power only where the application of the local rule would produce an unfair result. Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1048 (2d Cir. 1991). Oman contends that the application of Local Rule 65.1.1(b) would result in injustice because the rule's application would be violative of Oman's "unfettered right under Supplemental Rule E(5)(a) to obtain the release of its property by posting" adequate substitute security. (Def. Rep. Mem. at 7.) As discussed above, however, Supplemental Rule E(5)(a) does not provide a defendant with the unfettered right to post security that the court deems adequate;

16

rather, in the absence of a stipulation, the defendant must provide a form of security that is authorized by the local rule. Although Oman claims that it would be unfair to "allow plaintiff[s] the power to dictate the type of substitute security the defendant must post to release its property," id. at 9, it is not the Plaintiffs who are dictating the form of security, it is Local Rule 65.1.1(b).

In addition, the cases where courts of this circuit have exercised their discretion to depart from a local rule generally concern ministerial local rules that, in particular circumstances, have drastic, unintended consequences. In Somlyo, for example, the circuit upheld the district court's decision to depart from a local rule that required a party to file a petition of removal with a civil cover and "backing" sheet. Id. at 1048. The party's failure to include the proper sheets resulted in rejection by the clerk of the court and ultimately caused the petition to be filed untimely. The district court chose to depart from the local rule and deem the petition to be timely filed, on the grounds, inter alia, that the local rule at issue was "technical," designed only to regulate the appearance of filed papers, and that local rules should be liberally construed in order to avoid defaults. The Second Circuit held that the district court properly exercised its inherent power, because deviance from the technical local rule avoided the drastic result of dismissal and thus brought about a "just result." Id. at 1049; see also Phoenix Global Ventures, LLC v. Phoenix Assocs., 422 F.3d

17

72, 76 (2d Cir. 2005) (finding that fairness demanded that court depart from local rule and excuse party's failure "to comply with the ECF system requirements" where strict adherence to rule would have prevented party from filing timely motion for remand).

This is not a case where adherence to a ministerial procedural requirement produces a drastic outcome, such as default or dismissal. Rather, the rule at issue in this case is comparatively substantive, and its application causes precisely the result that was intended, namely enforcement of the requirement that, absent a stipulation, a claimant is not required to accept any form of security other than those enumerated in the rule. Beyond the inconvenience of submitting to the local rule's strictures, Oman can point to no unforeseen or calamitous outcome caused by adherence to the rule.

In sum, Oman's proposed form of substitute security does not comport with the requirements of Local Civil Rule 65.1.1(b). Oman has failed to show that the local rule is inconsistent with any Supplemental Rule or Local Admiralty Rule, and has not otherwise demonstrated why the Court should not abide by the rule. Accordingly, Plaintiffs cannot be compelled to accept the letter of credit from Mashreq Bank.

**CONCLUSION**

For the reasons set forth above, Defendant Oman's motion is DENIED.

SO ORDERED.
Dated:      New York, New York
            September 8, 2008

                                    John F. Keenan
                                    _____
                                    JOHN F. KEENAN
                                    United States District Judge